Albert J. Jackson appeals from a judgment for the defendant Secor Bank. The judgment was based on a directed verdict on his tort claims and a jury verdict on his breach of contract claim. We affirm.
This case arises out of a mistake allegedly made by Secor Bank when Jackson asked it to open a qualified individual retirement account (IRA) for him. Jackson changed jobs in September 1987, and in early November received a $23,251.41 check from his former employer representing the proceeds from his retirement account ($24,475.17 less $1223.76 federal income tax withheld). Jackson was informed that to avoid income tax liability he must "roll over" this sum into a qualified tax deferred account such as an IRA within 60 days. On November 9, 1987, Jackson went to the Brookwood branch of Alabama Federal Savings and Loan Association (now known as Secor Bank and referred to hereinafter as "Secor" or "the Bank") and told Deborah Eubank, a Bank employee, that he needed to roll this money over into a qualified plan. Jackson had seen the Bank's advertisements for its "Performance Fund account"; he asked Eubank if this account would be the best one to put his money into. Eubank advised Jackson to open a Performance Fund *Page 1378 
account. According to Jackson and according to affidavits signed by Deborah Eubank, she mistakenly told Jackson that the Performance Fund account was an IRA-type account.
Jackson opened a Performance Fund account with the Bank in November 1987. He received a Form 1099 from the Bank in January 1988 indicating that interest of $281 on the account would be reported to the Internal Revenue Service (IRS) as taxable income for 1987. After meeting with his accountant in early April 1988, Jackson wrote to Renda Grauel, manager of the Brookwood branch, stating:
 "Recently, in my annual tax preparation meeting, Russell Stone, CPA, examined the 1099 form you sent me and said it looked like the wrong type of account had been set up and if so, severe tax penalties could result."
In May 1988, after the 60-day roll-over period had expired, he placed his money in a qualified account. His accountant listed the Performance Fund account as a qualified (tax deferred) account on Jackson's 1987 federal income tax return, and Johnson did not report the $281 in interest as taxable income.
The IRS first informed Jackson on January 9, 1990, that his adjusted gross income for 1987 was $25,251 ($23,251 plus interest accrued) more than he had indicated on his 1987 tax return, because the account at the Bank was not a qualified IRA. Jackson's accountant contacted the Bank to help with his discussions with the IRS concerning the discrepancy in Jackson's 1987 tax return. A vice president at the Bank wrote to the IRS, stating in part:
 "Mr. Jackson was at that time [when he opened the account] erroneously informed by branch personnel that the account could be used as an IRA investment when, in fact, our computer system could not handle the reporting requirements for that particular type of investment. Our system has since been modified to accommodate the reporting."
The IRS asked for an affidavit, and Debbie Eubank, the teller who had opened the Performance Fund account for Jackson, signed an affidavit in November 1990, stating in part:
 "Mr. Jackson opened the account with the check made payable to him from a profit sharing plan. In the course of our discussion, prior to opening the account, there was a miscommunication between Mr. Jackson and me, which resulted in Mr. Jackson understanding that this particular account qualified as an IRA account when in fact this was not the case."
The IRS indicated that this affidavit was not sufficient, and Eubank signed a second affidavit prepared by the Bank's counsel, in which she stated in part:
 "The Performance Fund account offered by Secor at that time [November 1987] was not an individual retirement account. I might add that Secor's present Performance Fund account is now utilized for investment of individual retirement account funds.
 "I mistakenly opened the Performance Fund account after being informed by Mr. Jackson that he wanted the funds placed in an individual retirement account. His intention that he wanted funds rolled over in a tax-free manner to an individual retirement account was clear, and Secor's error resulted in the funds being invested in a Performance Fund account."
Debbie Eubank testified at trial that, before she signed the second affidavit, she told Gene Woodham, manager of the Bank's branches, that she had no specific recollection of the events and that she "couldn't recall what happened when Mr. Jackson came in."
The IRS assessed Jackson an additional tax liability of $13,482 because it determined that his qualified status did not "roll over" under the Performance Fund account. Jackson reached a settlement with the IRS in March 1991 whereby he paid it almost $5000. Jackson also amended his 1987 Alabama income tax return and paid $726.34 to the Alabama Department of Revenue.
Jackson filed his complaint against Secor on February 13, 1991, seeking damages based on breach of contract, negligence, fraud, breach of fiduciary duty, interference with economic opportunity, and "acting in a *Page 1379 
commercially unreasonable manner." Secor raised the statute of limitations in defense of the tort claims. The case was tried before a jury. At the close of Jackson's case, Secor moved for a directed verdict on Jackson's tort claims, arguing that those claims had accrued when Jackson discovered in March or April 1988 that the Performance Fund account was not tax qualified and that they were therefore barred by the two-year statute of limitations. Jackson argued that his causes of action did not accrue until he had incurred damage, and that he did not suffer damage until the IRS contacted him in 1990 about a balance due on his 1987 tax return. The trial court directed a verdict for Secor Bank on the tort claims, based on the statute of limitations, holding that the limitations period had begun to run when Jackson discovered in 1988 that the Performance Fund account was not tax qualified. The trial court held that as a matter of law Jackson had suffered damage when he filed his 1987 tax returns because, at that time, the court said, "he incurred a liability of admittedly, an unknown amount, but it was a liability which is a damage."
The trial court submitted the breach of contract claim to the jury, which found for Secor Bank on that claim. The trial court entered a judgment for Secor Bank on the breach of contract claim, and denied Jackson's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Jackson appealed.
Jackson first contends that the trial court erred in holding that his fraud claim was barred by the statute of limitations. We disagree. A fraud claim is subject to a two-year statute of limitations, § 6-2-38(a), Ala. Code 1975. Of course, the limitations period does not begin to run until the cause of action accrues, and a cause of action does not accrue until the actions of the tort-feasor result in injury or damage. If a fraud action has accrued, but the injured victim has no knowledge of it, the statute of limitations begins to run when the victim discovers the fraud. "We have held that fraud is discovered as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered."Hickox v. Stover, 551 So.2d 259, 262 (Ala. 1989). Jackson received from the Bank in January 1988 a Form 1099 indicating that the interest income on the account was being reported to the IRS and he was advised by his accountant in April 1988 that severe tax penalties could result from the fact that the money had been put in the wrong type of account. Jackson filed his complaint on February 13, 1991, more than two years after he had discovered the alleged fraud. Thus, his fraud claim was barred.
Jackson next contends that the trial court erred in directing a verdict for Secor Bank on his other tort claims on the grounds that they were also barred by the statute of limitations. It is settled law in Alabama that the statutory limitations period begins to run when the cause of action accrues:
 "If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage . . . however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered."
Garrett v. Raytheon Co., 368 So.2d 516, 519 (Ala. 1979), quotingKelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917), as quoted in Home Insurance Co. v. Stuart-McCorkle Inc., 291 Ala. 601,608, 285 So.2d 468, 473 (1973). The trial judge properly concluded that Jackson incurred an injury or damage — "a liability of admittedly, an unknown amount, but it was a liability which is a damage" — more than two years before he filed his complaint. Jackson clearly suffered damage when he filed his 1987 federal income tax return on April 14, 1988. There was no doubt that on that date Jackson was legally obligated to pay taxes on the funds he *Page 1380 
had deposited into the Performance Fund account. Thus, his tort claims were barred by the statute of limitations.
Jackson argues finally that the trial court erred in denying his motion for a judgment notwithstanding the verdict, or, in the alternative, a new trial, on his breach of contract claim. The evidence was sufficient to create a jury question on Jackson's breach of contract claim. The jury found for the defendant Bank. We find no error on the part of the trial court.
For the reasons stated above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
MADDOX, STEAGALL, KENNEDY and INGRAM, JJ., concur.